DAVID N. WOLF (6688)
LANCE SORENSON (10684)
JASON DUPREE (17509)
JORDEN W. TRUMAN (19718)
*Assistant Utah Attorneys General*
JOSHUA B. CUTLER (16434)
*Assistant Solicitor General*
OFFICE OF THE UTAH ATTORNEY GENERAL
dnwolf@agutah.gov
lancesorenson@agutah.gov
jndupree@agutah.gov
jwtruman@agutah.gov
jbcutler@agutah.gov

*Counsel for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| The Kurt Vonnegut Estate; Elana K. Arnold; Ellen Hopkins; Amy Reed; Caged Bird Legacy, LLC; Student Doe #1 (a minor), *by and through their parent*, Parent Doe #1; Student Doe #2 (a minor), *by and through their parent*, Parent Doe #2;<br><br>*Plaintiffs,*<br><br>v.<br><br>Attorney General Derek Brown, *in his official capacity as Attorney General for the State of Utah*; Davis School District Board of Education, Salt Lake City School District Board of Education, Salt Lake City School District, Utah State Board of Education, Washington School District, *Utah state government agencies*; and Alisa Mercer, Amanda Bollinger, | **DEFENDANTS' AMENDED MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00010-RJS-CMR<br><br>Judge Robert J. Shelby<br>Magistrate Judge Cecilia M. Romero |

|  |  |
|---|---|
| Amanda Longwell, Annie Romano, Ashley Anderson, Brent Bills, Brigit Gerrad, Bryan Jensen, Bryce Williams, Burke Staheli, Carol Barlow Lear, Charlotte Fife-Jepperson, Christina Boggess, Cindy Bishop Davis, Cole Kelley, Craig Hammer, Craig Seegmiller, Dan Linford, David Stirland, Elizabeth Grant, Emily Green, Emily Price, Heidi Gunn, Jennie Earl, Joani Stevens, Joann Brinton, Joseph Kerry, Julie Powell, Kristen Hogan, Larene Cox, Leann Wood, Matt Hymas, Michelle Barber, Molly Hart, Nate Salazar, Randy Boothe, Richard Holmes, Rod Hall, Ron Wade, Sarah Reale, *in their official capacities*, *Defendants*. |  |

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants identified in the above caption move the Court for an order dismissing with prejudice (1) each Defendant sued in his or her official capacity as a member or officer of a defendant school board;[1] and (2) Plaintiffs The Kurt Vonnegut Estate, Elana K. Arnold, Ellen Hopkins, Amy Reed, and Caged Bird Legacy, LLC.[2]

---

[1] These Defendants are identified in paragraphs 73, 75b, 75c, 75e, 75f, 75h, 75i of the Amended Complaint.

[2] Defendants originally filed a Motion to Dismiss on March 6, 2026. However, Defendants inadvertently omitted Plaintiff Caged Bird Legacy, LLC—who was added to the case as part of Plaintiffs' Amended Complaint—from the motion. The motion also cited to the paragraphs of Plaintiffs' original complaint. This Amended Motion to Dismiss adds Caged Bird Legacy, LLC and corrects citations to the Amended Complaint. Defendants hereby withdraw their original motion to dismiss.

## RELIEF SOUGHT AND GROUNDS

After weighing relevant public policy, the Utah Legislature determined that the State of Utah would not permit "instructional material" to be used in public schools if the material depicts "human genitals in a state of sexual stimulation or arousal"; "acts of human masturbation, sexual intercourse, or sodomy"; or "fondling or other erotic touching of human genitals or pubic region."[3] UTAH CODE § 53G-10-102(1)(e). The materials containing such depictions are deemed "pornographic or indecent" for minors. *Id*. This school-pornography law does not restrict Utah minors' access to the materials outside the public-school setting. The materials remain accessible through local public libraries, bookstores, and online.

Plaintiffs' lawsuit challenges this school-pornography law, arguing that the State of Utah is required to expend its resources to purchase or store specifically identified books that contain the sexually explicit depictions prohibited by the school-pornography law. Plaintiffs challenge this law despite the well-established principles that governments (1) are not constitutionally required to subsidize the exercise of constitutional rights and (2) can regulate obscene material without implicating First Amendment rights. And Plaintiffs challenge the law based on a standard that applies to adults, but not minors. *Compare* Pls.' Amend. Compl. at ¶¶ 9, 17, 117, 203 *with State v. Watts*, 2021 UT 60, ¶ 18, 498 P.3d 365 ("Miller is an

---

[3] The law contains exceptions to this prohibition, including for instruction materials selected by an LEA for health education, for medical courses, for family and consumer science courses, and for other courses the state board exempts in a state board rule. UT CODE § 53G-10-102(h)(ii).

adult obscenity case. In *Ginsburg v. New York*, a case decided before *Miller*, the Court established that the First Amendment does not require the same obscenity standard for minors as it does for adults."). Under the correct standard, Defendants will successfully show that the school-pornography law does not infringe on the Plaintiff Students' First Amendment rights.

However, before proceeding to a stage at which the Court should resolve Plaintiffs' claim on the merits, the Court should dismiss, under Rules 12(b)(1) and 12(b)(6), some of the other parties identified in Plaintiffs' Complaint. First, the Court should dismiss each Defendant joined in his or her official capacity as a member or officer of a defendant school board. This is because "[c]laims against individuals in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Myers v. St. George Police Dep't,*, No. 4:20-CV-00113-DN-PK, 2021 WL 4150888, at *8 (D. Utah Sept. 13, 2021). So "an official capacity lawsuit is unnecessary when the entity itself has been named," *Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-CV-00362-CW-PMW, 2014 WL 4662466, at *9 (D. Utah Sept. 18, 2014), and in such cases courts should dismiss the individual defendants named in their official capacities to avoid redundant and confusing claims. *See, e.g.*, *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) ("The district court correctly dismissed the claims against Chief Jordan in his official capacity as duplicative of the claims against the City of Tulsa.").

Second, the Court should dismiss Plaintiffs The Kurt Vonnegut Estate, Elana K. Arnold, Ellen Hopkins, Amy Reed, and Caged Bird Legacy, LLC due to a lack of

standing. This is because, as book authors, these Plaintiffs lack a constitutional right to have the State of Utah expend its resources to purchase and store their books in a public library, including a public-school library. *See Regan v. Tax'n With Representation of Washington*, 461 U.S. 540, 549 (1983) ("We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right."); *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 212 (2003) ("'A refusal to fund protected activity, without more, cannot be equated with the imposition of a "penalty" on that activity.'"); *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358 ("While in some contexts the government must accommodate expression, it is not required to assist others in funding the expression of particular ideas, including political ones."). Indeed, when a governmental entity makes a decision regarding which books to purchase and store in a public library, it is engaging in "government speech"—speech that does not infringe on private speech or implicate the Free-Speech clause. *Am. Libr. Ass'n, Inc.*, 539 U.S. at 206 ("A public library does not . . . collect[] books in order to provide a public forum for the authors of books to speak."). Thus, a "public school library obviously does not have to become the repository, at public expense, for books which are deemed by the proper authorities to be without merit. . . simply because they are not [allegedly] obscene . . . ." *Presidents Council, Dist. 25 v. Cmty. Sch. Bd. No. 25*, 457 F.2d 289, 292–93 (2d Cir. 1972). In sum, the Author Plaintiffs have no constitutional right to have their books purchased by a school district (in

schools where the books were not already accessible in school libraries)[4] or to have school districts incur the expense to continue storing the books (in schools where the books were previously purchased) on library bookshelves and, accordingly, their claims should be dismissed based on a lack of standing.[5]

Alternatively, the Court should dismiss Plaintiff The Kurt Vonnegut Estate for lack of standing because a probate estate is not a legal entity capable of suffering an injury or obtaining relief. Instead, any claim belonging to a probate estate must be brought by a court-appointed personal representative—something that does not appear to have occurred in this case based on the face of the Complaint.

## RELEVANT ALLEGATIONS

This lawsuit is brought by two groups of Plaintiffs. The first group consists of two students (Student Plaintiffs) who assert a violation of their First Amendment speech rights stemming from Utah's school-pornography laws—laws they allege "deny them access to constitutionally protected literature in their school libraries." Pls.' Amend. Compl. at ¶¶ 56-70, 225. The second group of Plaintiffs consists of

---

[4] Although Plaintiffs have not expressly claimed that school districts would be required to acquire the books identified in their complaint where the books were not already available in school libraries, that is the logical implication of Plaintiffs' alleged constitutional right (as the Fifth Circuit reasoned last year in rejecting a substantially similar claim to the claim in this case*). See Little v. Llano Cnty.*, 138 F.4th 834, 846 (5th Cir. 2025) ("[O]nce courts arm plaintiffs with a right to contest book removals, there is no logical reason why they cannot contest purchases too.").

[5] Defendants have not sought the dismissal of the Plaintiff Students at this time because Defendants prefer to raise these arguments regarding the Plaintiff Students after additional legal research and factual development.

three authors, the purported estate of deceased author, Kurt Vonnegut,[6] and Caged Bird Legacy, LLC[7] (Author Plaintiffs). Pls.' Amend. Compl. at ¶¶ 31-55. The Author Plaintiffs assert a violation of their First Amendment speech rights stemming from the same laws, which they allege "prevent their books from reaching their intended young adult audience." *Id.* at ¶ 212. Neither group alleges that the challenged laws intentionally targeted any author or book. *See generally id.* Nor do they allege that the challenged laws prevent students from accessing any book on their own, including from bookstores, public (non-school) libraries, or the internet. *See generally id.*

The Plaintiffs have brought these claims against a long list of Defendants. For the purposes of this Motion, the Defendants can be grouped into three groups: (1) "Defendant Derek Brown, "the Attorney General of Utah" as the person "who is responsible for enforcing Utah's laws"; *id.* at ¶ 71; (2) various state education boards, including the Utah State Board of Education," "Davis School District's Board of Education," "Salt Lake City School District's Board of Education," and "Washington School District's Board of Education," *id.* at ¶¶ 72, 75; and (3) the individual board members and select officers of the defendant school boards. The

---

[6] Although "The Kurt Vonnegut Estate" is identified as a plaintiff, the Complaint does not identify a personal representative or other individual authorized to act on behalf of the Kurt Vonnegut Estate in Utah (or anywhere). *See* Pls.' Amend. Compl. at ¶ 32.
[7] As alleged in the Amended Complaint, "Plaintiff Caged Bird Legacy, LLC . . . is the legal entity representing Dr. Maya Angelou's beneficiaries and literary assets." Pls.' Amend. Compl. ¶ 38.

individual board members and officers of the defendant school boards are sued only in their official capacities. *Id.* at ¶¶ 73, 75.

### LEGAL STANDARD

To withstand a motion to dismiss, a complaint must include sufficient factual allegations to state a claim that is plausible, not merely conceivable. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (cleaned up). In determining whether the complaint validly states a claim, courts disregard mere labels and conclusions, and "formulaic recitation[s] of the elements of a cause of action." *Id.* 1190-91. In considering a motion to dismiss, the complaint's factual allegations are taken as true and reasonable inferences must be indulged in favor of the complainant. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976).

A 12(b)(1) motion to dismiss permits a defendant to challenge a court's subject matter jurisdiction both facially and factually. *United States v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). Facial challenges target the adequacy of allegations in the complaint. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When presented with facial challenges, courts (1) identify allegations entitled to an assumption of truth and (2) evaluate whether these allegations plausibly support entitlement to relief. *Iqbal, 556 U.S. at 680*; *Valdez v. National Security Agency*, 228 F.Supp.3d 1271, 1279, & n.24 (D. Utah 2017).

To be entitled to an assumption of truth, allegations must be "well-pleaded," which means, at minimum, they cannot be legal conclusions, bare assertions, or "formulaic recitations" of claim elements. *Valdez,* 228 F.Supp.3d at 1279. In resolving factual challenges to subject matter jurisdiction, the court "does not

presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1279, n.24.

## ARGUMENT

### I. The Court Should Dismiss the Individual Defendants.

First, the Court should dismiss each individual defendant joined in his or her official capacity as a member or officer of a defendant school board. This is because "[c]laims against individuals in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent.'" *Myers v. St. George Police Dep't,*, No. 4:20-CV-00113-DN-PK, 2021 WL 4150888, at *8 (D. Utah Sept. 13, 2021); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)). Indeed, "[a] person sued in [an] official capacity has no stake, as an individual, in the outcome of the litigation." *Myers*, 2021 WL 4150888, at *8; *see also Lewis v. Clarke*, 581 U.S. 155, 162 (2017) ("This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543–44 (1986) ("As a member of the School Board sued in his official capacity Mr. Youngman has no personal stake in the outcome of the litigation and therefore did not have standing to file the notice of appeal.").

For this reason, "an official capacity lawsuit is unnecessary when the entity itself has been named," *Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-CV-00362-CW-PMW, 2014 WL 4662466, at *9 (D. Utah Sept. 18, 2014), and in such cases courts routinely dismiss the individual defendants named in their official capacities. *See, e.g.*, *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) ("The district court correctly dismissed the claims against Chief Jordan in his official capacity as duplicative of the claims against the City of Tulsa."); *Douglas v. Beaver Cnty. Sch. Dist. Bd.*, 82 F. App'x 200, 203 (10th Cir. 2003) (affirming dismissal of "official capacity" defendants as "superfluous"); *Myers*, 2021 WL 4150888, at *8 (dismissing "official capacity" defendants for a failure to state a claim); *Summum v. Pleasant Grove City*, No. 2:05CV638 DAK, 2010 WL 2330336, at *2 (D. Utah June 3, 2010) ("As an initial matter, [plaintiff's] claims against the individuals sued in their official capacities are dismissed.").

Accordingly, the Court should dismiss each Defendant joined in his or her official capacity as a member or officer of a defendant school board. *See* Pls.' Amend. Compl.  at ¶¶ 73, 75b, 75c, 75e, 75f, 75h, 75i.

## II.   <u>The Court Should Dismiss the Author Plaintiffs.</u>

Next, the Court should dismiss the Author Plaintiffs from the lawsuit due to a lack of standing. "To establish the 'irreducible constitutional minimum of standing,'" the Author Plaintiffs "must show that [they] 'suffered an injury in fact—*an invasion of a legally protected interest* which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Courage to Change*

*Ranches Holding Co. v. El Paso Cnty., Colorado*, 73 F.4th 1175, 1188 (10th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Additionally, the Author Plaintiffs must show "that [their] injury is 'fairly traceable'" to the challenged action and "that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id*. The Court should dismiss all Author Plaintiffs because none of them have alleged an invasion of a legally protected interest. Additionally, the Court should dismiss "The Kurt Vonnegut Estate" because a probate estate is not a legal entity capable of suffering an injury or obtaining relief.

> a.  *The Court Should Dismiss All Author Plaintiffs.*

The Court should dismiss the Author Plaintiffs because they have not suffered an invasion of a constitutionally protected right. In the Complaint, Plaintiffs allege that "authors and publishers have standing to challenge regulations that prohibit them from reaching their intended audience or impose financial disincentives on their work." Pls.' Compl.  at ¶ 209. But the Court should reject this conclusory allegation[8] as inconsistent with governing law.

To resolve this issue, a proper understanding of the school-pornography law is needed. Importantly, the regulation does not target any specific book or author for exclusion. *See* UT CODE § 53G-10-102(1)(e). Nor does it prohibit minors from reading or obtaining any material the State Legislature has deemed pornographic

---

[8] On a motion to dismiss, "the court need not accept as true any conclusory allegations contained in the complaint." *Coburn v. Nordeen*, 72 F. App'x 744, 746 (10th Cir. 2003).

or indecent. *Id*. § 53G-10-102(2)(A) (regulating the conduct of a "public school or an LEA" in a "school setting" but not the conduct of others). It also does not prohibit booksellers, online retailers, publishers, or authors from selling their books to minors. *Id*. Instead, the regulation prohibits *public schools* from using materials containing depictions of specific sexual conduct as "instructional materials" in a "school setting." UTAH CODE § 53G-10-102(h)(ii).

This law has not caused a constitutionally recognized injury to the Author Plaintiffs because (1) authors do not have a constitutional right to have their books purchased by, or stored in, a public library and because (2) a governmental entity's decision regarding which private speech to make available to the public constitutes the government's "own expressive conduct" to which "the Free Speech Clause has no application."

i. *Authors Lack a Constitutional Right to Have Books Purchased and Stored by Public Libraries.*

The Court should dismiss the Author Plaintiffs because authors lack a constitutional right to have the State of Utah expend its resources to purchase and store the authors' books in a public library. Indeed, the United States Supreme Court has "held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." *Regan v. Tax'n With Representation of Washington*, 461 U.S. 540, 549 (1983). The Court has also held that a "refusal to fund protected activity, without more, cannot be equated with the imposition of a '*penalty*' on that activity," *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 212 (2003) (plurality opinion) (emphasis added); and that the government

"is not required to assist others in funding the expression of particular ideas, including political ones." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 358.

For example, in *Rust v. Sullivan*, Congress had appropriated federal funding for family planning services and forbidden the use of such funds in programs that provided abortion counseling. 500 U.S. 173, 178. Recipients of these funds challenged this restriction, arguing that it impermissibly conditioned the receipt of a benefit on the relinquishment of their constitutional right to engage in abortion counseling. *Id.*, at 196. But the Supreme Court rejected that claim, recognizing that "the Government [was] *not denying a benefit to anyone*, but [was] instead simply insisting that public funds be spent for the purposes for which they were authorized." *Id.* (emphasis added). Thus, a governmental entity does not infringe on any rights when it chooses how to allocate governmental resources.

ii.  *Library Inventory Decisions Constitutes Government Speech, Not Regulation of Private Speech.*

That a governmental entity does not infringe on free speech rights when it chooses how to allocate its resources is consistent with a principle in a related line of cases through which the Supreme Court has explained that a governmental entity does not infringe on private free-speech rights when "mak[ing] content based judgments in deciding what private speech to make available to the public." *Am. Libr. Ass'n, Inc.*, 539 U.S. at 204 (citing cases). In these cases, the governmental entity's decision regarding which private speech to make available to the public was held to constitute the government's "own expressive conduct" to which "the Free

Speech Clause has no application." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 464 (2009).

For example, in *Pleasant Grove City, Utah v. Summum*, the Supreme Court considered "whether the Free Speech Clause of the First Amendment entitles a private group to insist that a municipality permit it to place a permanent monument in a city park in which other donated monuments were previously erected." 555 U.S. 460, 464 (2009). The Supreme Court rejected the private group's claim, concluding that "although a park is a traditional public forum for speeches and other transitory expressive acts, the display of a permanent monument in a public park is not a form of expression to which forum analysis applies." *Id.* Instead, the Court explained that "the placement of a permanent monument in a public park is best viewed *as a form of government speech* and is therefore not subject to scrutiny under the Free Speech Clause." *Id.* (emphasis added). Elaborating further on this point, the Court stated that the "Free Speech Clause restricts government regulation of private speech" but "it does not regulate government speech." *Id.* at 467. So even though the private group was prevented from expressing itself (through the installation of a monument), the Court concluded that the city's decision to reject the monument constituted the city's "own expressive conduct" to which "the Free Speech Clause has no application." *Id.*

Similarly, in *Arkansas Ed. Television Comm'n v. Forbes*, the Supreme Court held that public forum principles do not generally apply to a *public* television station's editorial judgments regarding the private speech it presents to its viewers.

523 U.S. 666, 672–673 (1998) (emphasis added). In so holding, the Court explained that "broad rights of access for outside speakers would be antithetical, as a general rule, to the discretion that stations and their editorial staff must exercise to fulfill their journalistic purpose and statutory obligations." *Id*. at 673. The Court also recognized that a broad right of public access "would [also] risk implicating the courts in judgments that should be left to the exercise of journalistic discretion." *Id*. at 674.

And in *National Endowment for Arts v. Finley*, the Supreme Court upheld an art funding program that required the National Endowment for the Arts (NEA) to use content-based criteria in making funding decisions. 524 U.S. 569 (1998). In so doing, the Court expressly declined to apply forum analysis, reasoning that it would conflict with "NEA's mandate . . . to make esthetic judgments, and the inherently content-based 'excellence' threshold for NEA support." *Id*. at 586.

Then, in the *American Library Associations*, a plurality of the Supreme Court stated that the "principles underlying *Forbes* and *Finley* also apply to a public library's exercise of judgment in selecting the material it provides its patrons." 539 U.S. 194, 205. In that case, a group of libraries and web site publishers challenged provisions of the Children Internet Protection Act, which conditioned federal funding to public libraries on the libraries' installation of software blocking obscene or pornographic images and that prevented minors from obtaining access to material that is harmful to them. 539 U.S. 194, 199. The Court rejected this challenge, explaining that a "public library does not . . . collect[] books in order to

15

provide a public forum for the authors of books to speak." *Id.* at 206. Instead, the Court stated that a library collects these items for the benefit of its patrons—an activity that "necessarily consider[s] content" and that must "enjoy broad discretion." *Id.* at 205. In short, the Court concluded that a library's decision regarding its catalogue of offered materials was "not a restraint on private speech." *Id.* at 209.

Consistent with these Supreme Court cases, Federal Circuit Courts have concluded that Free-Speech rights are not implicated under factual circumstances substantially similar to this case. For example, in *People for the Ethical Treatment of Animals, Inc. v. Gittens*, Judge Kavanaugh (writing for the court), rejected a Free-Speech claim regarding a public entity's decision to include certain works in an art exhibit, concluding that this choice constituted "government speech." 414 F.3d 23 (D.C. Cir. 2005). In so doing, he analogized to a government's inventory decisions for "a public library": "[w]ith respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude." *Id.* at 28. He then rejected the Free-Speech Claim because the "First Amendment's Free Speech Clause does not limit the government as speaker." *Id.*; *see also Little v. Llano Cnty.*, 138 F.4th 834, 837 (5th Cir. 2025) ("[A] library's collection decisions are government speech and therefore not subject to Free Speech challenge.").

As a final example, in *Presidents Council, Dist. 25 v. Cmty. Sch. Bd. No. 25*, the Second Circuit rejected a Free-Speech claim in substantially identical

circumstances to the circumstances in this case. 457 F.2d 289 (2d Cir. 1972). In that case, the court rejected a Free-Speech challenge to a governmental entity's decision to remove certain books from a school library. *Id.* at 291. In so doing, the court clarified that the case was not "dealing with the collection of a public book store but with the library of a public junior high school"—a library for which "some authorized person or body has to make a determination as to what the library collection will be." *Id.* at 291-92. In this context, the court rejected the free-speech claim, explaining that the "public school library obviously does not have to become the repository, at public expense, for books which are deemed by the proper authorities to be without merit . . . simply because they are not obscene." *Id.* at 292-93.

In making this determination, the Second Circuit acknowledged that "no matter what choice of books" were made, some "person or group may well dissent." *Id.* at 292. But the "ensuing shouts of book burning, witch hunting, and violation of academic freedom hardly elevate th[e] intramural strife to first amendment constitutional proportions." *Id.* Indeed, the court explained that if it did implicate the First Amendment, "there would be a constant intrusion of the judiciary into the internal affairs of the school." *Id.*; *see also Little v. Llano Cnty.*, 138 F.4th 834, 837 (5th Cir. 2025) ("A plaintiff may not invoke that right to challenge a library's decisions about which books to buy, which books to keep, or which books to remove.").

In sum, the cases from the Supreme Court and Federal Circuits cited above establish that a governmental entity does not infringe on private free-speech rights when deciding which books to make available to the public in a private library. Indeed, that conduct does not even constitute a curtailment of private speech. Instead, it is classified as government speech to which the Free Speech Clause has no application.

Based on these principles, the Court should dismiss the Author Plaintiffs. The Defendants in this case—who are government actors—have no obligation under the Constitution to expend resources (either funds for purchasing books or finite library shelf space) on any of the Author Plaintiffs' books. Instead, when the governmental actors identified in this case make decisions regarding which books should be purchased and stored in school libraries, they are merely engaging in a form of government speech to which the Free-Speech Clause does not apply. Accordingly, the Author Plaintiffs did not suffer a cognizable injury and they should be dismissed.

> b. *Alternatively, the Court Should Dismiss The Kurt Vonnegut Estate Because it Is Not a Legal Entity Capable of Bringing Suit.*

Alternatively, the Court should dismiss the Kurt Vonnegut Estate because it is not a legal entity. It is well-established, under Utah law, that a probate estate is not a legal entity.[9] An estate cannot act on its own behalf. It cannot legally own

---

[9] In determining whether entities have standing, Federal Courts look to state law. *See AK Capitol v. Casa Del Sol Spirits Co.*, No. 2:25-CV-11-HCN, 2025 WL 589697, at *3 (D. Utah Feb. 24, 2025) ("[A]sk[ing] whether state law treats the trusts in question as mere 'fiduciary relationships' between trustees and beneficiaries or as 'distinct legal entities'—that is, as juridical persons with the capacity to act (or sue

property or file a lawsuit. *See Julian v. Petersen*, 966 P.2d 878, 881 (Utah Ct. App. 1998) (explaining that a "deed naming a deceased person or his or her estate as a grantee is void because neither the estate nor the decedent is a legal entity"). Indeed, because a probate estate "is not a legal entity," it cannot defend or prosecute legal claims on its own behalf. *Pierucci v. Pierucci*, 2014 UT App 163, ¶ 31; *see also Faucheaux v. Provo City*, 2018 UT App 150, ¶ 5 n.2 ("An estate is not a legal entity that can bring suit."); *Schoeller's Est. v. Becker*, 360 A.2d 905, 906 (Conn. Super. Ct. 1975) ("[I]t is elemental that in order to confer jurisdiction on the court the plaintiff must have an actual legal existence."). Instead, a lawsuit involving an estate may only be brought by or against a probate estate's duly appointed personal representative. *Pierucci*, 2014 UT Ct. App. 163 at ¶ 31 ("[A] personal representative must be appointed" before claims for or against an estate may proceed. (citing UTAH CODE § 75-3-104 ("No proceeding to enforce a claim against the estate of a decedent . . . may be revised or commenced before the appointment of a personal representative.")).

Where a purported party is not a person or a legal entity, it lacks standing to bring claims. *See BV Lending, LLC v. Jordanelle Special Serv. Dist.*, 2013 UT App 9, ¶ 10, 294 P.3d 656 (affirming decision of trial court that plaintiff "lacked standing to bring the Notice Claims because it did not exist as a legal entity at the time the

---

and be sued) in their own names."); *see also Arndt v. City of Med. Park*, No. CIV-18-206-D, 2019 WL 6499138, at *2 (W.D. Okla. Dec. 3, 2019) ("A noncorporate entity's capacity to be sued is determined by the law of the state in which the district court is located." (citing Fed. R. Civ. P. 17(b)(3))).

assessments were levied"); *Sewell v. Xpress Lube*, 2013 UT 61, ¶ 22, 321 P.3d 1080

(citing favorably a Connecticut court decision that concluded that "the lower court

lacked jurisdiction because the plaintiff was a nonexistent entity lacking standing").

For example, in a 2018 case, a Connecticut court found that a trust did "not possess

any capacity to sue and, in the absence of such capacity, it lacked the legal power to

confer subject matter jurisdiction upon th[e] court." *JAT Fin. Servs., Inc. v.

JGRAMS, LLC*, 2018 WL 1386193, at *2 (Conn. Super. Ct. Feb. 21, 2018); *see also

Est. of Smith v. Wells Fargo Bank, N.A.*, 2019 WL 4060126, at *1 (Conn. Super. Ct.

Aug. 7, 2019) ("As the plaintiff 'Estate of Charlie J. Smith' does not have standing to

pursue this action, the action is dismissed as to this plaintiff."). Similarly, a

California federal court affirmed the dismissal of an action for a lack of subject-

matter jurisdiction because "[a] probate or trust estate is not a legal entity; it is

simply a collection of assets and liabilities" and "[a]s such, it has no capacity to sue

or be sued, or to defend an action." *Evans v. Wells Fargo Bank, N.A.*, 2013 WL

4049062, at *2 (N.D. Cal. Aug. 8, 2013). And in *Becker*, the court explained that it

"is elemental that in order to confer jurisdiction on the court the plaintiff must have

an actual legal existence." 360 A.2d at 906.

Other courts across the country have come to the same conclusion. *See Epps

v. Ouachita Cnty. Med. Ctr.*, 2021 Ark. App. 389, at 8–9, 636 S.W.3d 787, 793 ("[A]n

estate is not a legal entity with standing to sue."); *Johnston Mem'l Hosp. v.

Bazemore*, 672 S.E.2d 858, 860 (Va. 2009) (declaring an action "a nullity" where the

"named plaintiff . . . was not a legal entity at the time the action was filed"); *Myers

*v. Deets*, 2014 WL 605493, at *3 (Ind. Ct. App. Feb. 17, 2014) ("[T]he estate of a decedent has no standing as a legal entity. It can neither sue nor be sued nor hold title to nor possession of personalty."); *Miller's Est. v. St. Joseph Cnty. Home*, 87 N.E.2d 886, 887 (Ind. App. 1949) ("St. Joseph County Home is not a legal entity of any kind. It is merely the name of a place. It therefore lacks the right or power to maintain in action."); *Pettengill v. United States*, 253 F. Supp. 321, 323 (N.D. Ill. 1966) ("The estate is no longer a sufficient legal entity to be a real party in interest here, and therefore cannot have attributed to it a standing to sue."). So it is in this case.

The Complaint identifies only "The Kurt Vonnegut Estate" as the party to this proceeding. Pls.' Amend. Compl. at ¶ 32. And although Plaintiffs argue that the "Vonnegut Estate" is "comprised of the author's children and beneficiaries Nanette Vonnegut, Lily Vonnegut, Mark Vonnegut, and Edith Vonnegut-Squibb," Plaintiffs do not allege that any of the children have been appointed as personal representatives, are appearing as parties in the case, or otherwise have authority to bring a claim on behalf of the Vonnegut Estate. Because The Kurt Vonnegut Estate is not a legal entity and because no one has stepped forward with authority to bring a claim on behalf of the probate estate of Kurt Vonnegut, "The Kurt Vonnegut Estate" must be dismissed from the case.

In sum, the Author Plaintiffs should be dismissed for a lack of standing due to a lack of a constitutionally recognized injury. Alternatively, the Kurt Vonnegut

Estate should be dismissed for a lack of standing because it is not a legal entity capable of bringing suit.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss with prejudice (1) each Defendant joined in his or her official capacity as a member or officer of a defendant school board;[10] and (2) Plaintiffs The Kurt Vonnegut Estate, Elana K. Arnold, Ellen Hopkins, Amy Reed, and Caged Bird Legacy, LLC.

DATED March 13, 2026

Respectfully submitted,

 */s/ Joshua Cutler*
Joshua Cutler
Assistant Solicitor General
*Counsel for Defendants*

---

[10] These Defendants are identified in paragraphs 73, 75b, 75c, 75e, 75f, 75h, 75i of the Amended Complaint.

CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I caused a true and correct copy of the

foregoing **AMENDED MOTION TO DISMISS** to be filed using the Court's

electronic filing system, which effectuated service of such filing upon all counsel

who have entered an appearance.

　　　　　　　　　　　　　　　　 */s/ Joshua B. Cutler*　　
　　　　　　　　　　　　　　　　Joshua Cutler
　　　　　　　　　　　　　　　　Assistant Solicitor General
　　　　　　　　　　　　　　　　*Counsel for Defendants*