IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CAGED BIRD LEGACY, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEREK BROWN, in his official capacity as Attorney General for the State of Utah, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>2:26-cv-00010-RJS-CMR<br><br>District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Cecilia M. Romero |

This case involves a constitutional challenge to Utah Code § 53G-10-103 (Book Removal Law).[1] Pending before the court is Defendants' Motion to Dismiss.[2] For the reasons explained below, the Motion is GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND[3]

### *A. The Parties*

Plaintiffs fall into two categories: the Student Plaintiffs and the Author Plaintiffs. The Student Plaintiffs are Student Doe #1 and Student Doe # 2.[4] They are both students at Utah public high schools who bring their claims by and through their parents, Parent Doe #1 and Parent Doe #2.[5]

---

[1] Dkt. 98, *First Amended Complaint* (*Complaint*) ¶¶ 1–2; *see also* Dkt. 98-1, *Exhibit A1* (*Utah Code § 53G-10-103*).

[2] Dkt. 109, *Defendants' Amended Motion to Dismiss* (*Motion*).

[3] The following facts are drawn from the Complaint. In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[4] *Complaint* ¶ 56.

[5] *Id.* ¶¶ 56–57.

The Author Plaintiffs are five authors whose books have been removed from Utah public schools under the Book Removal Law and entities that hold literary rights to the same: Kurt Vonnegut, LLC (KVLLC); Caged Bird Legacy, LLC; Elana K. Arnold; Ellen Hopkins; and Amy Reed.[6]

Kurt Vonnegut was an award-winning American author, playwright, and World War II veteran.[7] His military experience influenced his critically acclaimed novel *Slaughterhouse-Five*, an American classic that explores the horror and trauma of war.[8] Plaintiff KVLLC owns the rights, interests, titles, and intellectual property to Vonnegut's work and is controlled by Vonnegut's children.[9]

Dr. Maya Angelou was an American poet and memoirist.[10] In 1969, Angelou published her autobiographical work, *I Know Why the Caged Bird Sings*, which tells the story of growing up as a Black woman in the American South experiencing racism and trauma.[11] Plaintiff Caged Bird Legacy, LLC represents Angelou's beneficiaries and literary assets.[12]

Plaintiff Elana Arnold has authored more than 30 published works for and about children and teens.[13] Her 2017 book *What Girls Are Made Of* explores young womanhood, self-love, and

---

[6] *Complaint* ¶ 31–55.

[7] *Id.* ¶ 33.

[8] *Id.* ¶ 34. *SlaughterHouse-Five* has earned numerous accolades, including Hugo Award Nominee (Best Novel, 1970), Nebula Award Nominee (Best Novel, 1970), Time Magazine's 100 Best English Language Novels (1923–2005), and Modern Library's 100 Best Novels of the 20th Century (#18 on the editors' list, #23 on the readers' list). *Id.* ¶ 35.

[9] Dkt. 122, *Stipulated Motion to Substitute the Real Party in Interest* (*KVLLC Motion*); *see also* Dkt. 123, *Order Granting [122] Stipulated Motion to Substitute the Real Party in Interest* (*KVLLC Order*) (substituting KVLLC as the real party in interest in place of The Kurt Vonnegut Estate).

[10] *Complaint* ¶ 39.

[11] *Id.* ¶ 40.

[12] *Id.* ¶ 38.

[13] *Id.* ¶ 46.

fulfillment.[14] Her 2018 young adult novel *Damsel* is a feminist reworking of a traditional fairytale that explores sexual assault, rape culture, misogyny, and the harm of patriarchy.[15]

Plaintiff Ellen Hopkins is an acclaimed, best-selling author.[16] Her 2009 book *Tricks* examines themes of love, sex, safety, community, family, and the search for freedom through the lives of five teenagers.[17] Her 2014 book *Tilt* is a story of three teenagers searching for ways to find strength when one's world has been "tilted" off its axis.[18] Hopkins' 2013 book *Fallout* explores drug abuse and generational harm caused by addiction.[19]

Plaintiff Amy Reed has published eleven books.[20] Her young adult novel *Beautiful* follows a teenager grappling with self-worth, substance abuse, and the pressures of toxic relationships.[21] Her young adult novel *The Nowhere Girls* involves three teenage girls who unite to confront rape culture and sexual assault in their high school.[22]

Defendants are various Utah officials, state agencies, and state officers, including:

- Derek Brown, in his official capacity as Attorney General of Utah;
- Utah state government agencies: Utah State Board of Education, Davis School District, Davis School District Board of Education, Salt Lake City School District,

---

[14] *Id.* ¶ 47. *What Girls Are Made Of* was recognized as a 2017 National Book Award finalist in the young people's literature category. *Id.*

[15] *Id.* The Americal Library Association (ALA) recognized *Damsel* as a Printz Honor Book in 2019. *Id.*

[16] *Id.* ¶ 49.

[17] *Id.* ¶ 50. *Tricks* was named a Goodreads Choice Award Nominee for Young Adult Fiction and included on the New York Public Library's Best Books for Teens and the ALA Rainbow list selections. *Id.*

[18] *Id.* *Tilt* has been recognized as a Young Adult Library Services Association Teens' Top Ten Nominee and included in the International Literary Associations Young Adult list. *Id.*

[19] *Id.*

[20] *Id.* ¶ 52.

[21] *Id.* ¶ 53.

[22] *Id.* *The Nowhere Girls* earned acclaim as an ALA Best Book for Young Adults for its depiction of solidarity and resistance against sexual violence. *Id.*

Salt Lake City School District Board of Education, Washington School District, and Washington School District Board of Education (collectively, Entity Defendants);

- Board members and officials of the Entity Defendants sued in their official capacity: Amanda Bollinger, Randy Boothe, Joann Brinton, Christina Boggess, Cindy Bishop Davis, Jennie Earl, Emily Green, Rod Hall, Molly Hart, Matt Hymas, Cole Kelley, Joseph Kerry, Carol Barlow Lear, Sarah Reale, Leann Wood, Brigit Gerrad, Emily Price, Alisa Mercer, Joani Stevens, Julie Powell, Michelle Barber, Kristen Hogan, Bryce Williams, Charlotte Fife-Jepperson, Ashley Anderson, Nate Salazar, Annie Romano, Bryan Jensen, Amanda Longwell, David Stirland, Larene Cox, Craig SeegMiller, Burke Staheli, Craig Hammer, Heidi Gunn, Ron Wade, Brent Bills, Richard Holmes, Dan Linford, and Elizabeth Grant (collectively, Individual Defendants).[23]

### *B. The Book Removal Law*

In 2022, the Utah Legislature enacted the Book Removal Law, which prohibited "sensitive materials" in the school setting and declared material deemed "sensitive" is pornographic or indecent material.[24] In 2024, the Utah Legislature enacted an amended statute that includes the following relevant provisions.[25]

Under the Book Removal Law, "[s]ensitive materials are prohibited in the school setting."[26] The statute defines "sensitive material" as material that is "objective sensitive

---

[23] *Id.* ¶¶ 71–75.

[24] *Id.* ¶ 106 (quoting Utah Code Ann. § 53G-10-103(g)(I) (2022)).

[25] *Id.* ¶ 130.

[26] Utah Code Ann. § 53G-10-103(2)(a).

material or subjective sensitive material."[27] "Objective sensitive material" is "instructional material that constitutes pornographic or indecent material," which "means any material that: is harmful to minors; is pornographic; is a description of or depiction of illicit sex or sexual immorality; contains a nude or partially denuded figure; or is obscene animal abuse material."[28] The Code further defines "a description of or depiction of illicit sex or sexual immorality" as "human genitals in a state of sexual stimulation or arousal"; "acts of human masturbation, sexual intercourse, or sodomy"; or "fondling or other erotic touching of human genitals or pubic region."[29] This definition "does not apply to any material which, when taken as a whole, has serious value for minors, however, a description or depiction of illicit sex or sexual immorality has no serious value for minors."[30]

The Book Removal Law includes a "per se ban" and a "statewide ban."[31] Under the Per Se Ban, a Local Education Agency (LEA)'s employee, enrolled student, parent of an enrolled student, or a member of the governing board may challenge any instructional material by initiating "a sensitive material review."[32] Upon receiving an allegation, the LEA must "make an initial determination as to whether the allegation presents a plausible claim that the challenged instructional material constitutes sensitive material," and "if the LEA determines that the allegation presents a plausible claim . . ., immediately remove the challenged material from any school setting . . . ."[33] "In evaluating, selecting, or otherwise considering action related to a

---

[27] *Id.* § 53G-10-103(1)(h)(i).

[28] *Id.* § 53G-10-103(1)(e); *id.* § 76-5c-208(1)(a)(iii).

[29] *Id.* § 76-5c-207(1)(a)(i)(A), (B), (C).

[30] *Id.* § 76-5c-207(5).

[31] *See Complaint* ¶¶ 7, 10.

[32] Utah Code Ann. § 53G-10-103(3)(a).

[33] *Id.* § 53G-10-103(4)(a); *see also Complaint* ¶ 134.

given instructional material," public schools and LEAs are required to "prioritize protecting children from the harmful effects of illicit pornography over other considerations."[34]

The Statewide Ban goes into effect once three school districts classify a book as "objective sensitive material." [35] At which point, the book must be removed from every LEA in the state.[36]

*C. Effect of the Book Removal Law*

The Per Se Ban has caused many LEAs to remove books from their library shelves. Davis School District has removed approximately 91 books, including the following books written by the Plaintiff Authors: Vonnegut's *Slaughterhouse-Five*; Angelou's *I Know Why the Caged Bird Sings*; Hopkins' *Tilt*, *Tricks*, *Collateral*, *Fallout*, *Glass*, *People Kill People*, *Perfect*, and *Rumble*; and Arnold's *What Girls Are Made Of*, *Damsel*, *Infandous*, and *Red Hood*.[37]

Washington School District has removed approximately 57 books, including the following books written by the Plaintiff Authors: Vonnegut's *Slaughterhouse-Five*; Reed's *Beautiful*; Arnold's *What Girls Are Made Of*, *Damsel*, *Infandous*, *and Red Hood*; and Hopkins' *Tilt*, *Triangles*, *Tricks*, *Fallout*, *Identical*, *Glass*, *People Kill People*, *Perfect*, and *Rumble*.[38]

Granite School District had removed approximately 106 books, including the following books written by the Plaintiff Authors: Vonnegut's *Slaughterhouse-Five*; Angelou's *I Know Why the Caged Bird Sings*; Reed's *Beautiful* and *The Nowhere Girls*; Hopkins' *Tilt*, *Triangles*, *Tricks*,

---

[34] Utah Code Ann. § 53G-10-103(2)(c).

[35] *Id.* § 53G-10-103(7)(b) (alternatively, "at least two school districts and five charter schools"); *Complaint* ¶ 133.

[36] Utah Code Ann. § 53G-10-103(7).

[37] *Complaint* ¶¶ 144–46.

[38] *Id.* ¶¶ 153–54.

*Crank*, *Fallout*, *People Kill People*, and *Perfect*; and Arnold's *What Girls Are Made Of*, *Damsel*, *Infandous*, and *Red Hood*.[39]

Alpine School District, Canyons School District, Nebo School District, and Jordan School District have also banned and removed books pursuant to the book ban, including books written by the Plaintiff Authors.[40]

Pursuant to the Statewide Ban, twenty-two books have been removed from every LEA in Utah as of February 5, 2026.[41] The Statewide Ban includes Arnold's *What Girls Are Made Of* and *Damsel* and Hopkins' *Tilt*, *Fallout*, and *Tricks*.[42]

### *D. Effect on the Author Plaintiffs*

The intended audience for each of the Author Plaintiffs is young adults.[43] The removal of their books, and the stigma associated with labeling the works as "pornographic" or "indecent," causes each Author Plaintiff personal and professional harm, and deprives their intended audience of literature specifically written to help young adults understand and navigate the world.[44] For Vonnegut and Angelou specifically, the Book Removal Law harms their legacies.[45]

---

[39] *Id.* ¶¶ 161–63.

[40] *Id.* ¶¶ 172–77.

[41] *Id.* ¶ 137.

[42] *Id.* ¶ 139.

[43] *Id.* ¶ 55.

[44] *Id.* ¶ 55; *see also id.* ¶¶ 37, 43.

[45] *Id.* ¶¶ 37, 43.

## PROCEDURAL HISTORY

Plaintiffs initiated this action on January 6, 2026.[46] On February 5, 2026, Plaintiffs filed the operative Complaint asserting two claims under 42 U.S.C. § 1983 for unreasonable overbroad content-based restriction, one asserted by the Author Plaintiffs and one asserted by the Student Plaintiffs.[47] On March 13, 2026, Defendants filed the Motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[48] The Motion is fully briefed.[49] On August 3, 2026, the parties filed the Stipulated Motion to Substitute as the Real Party in Interest Plaintiff KVLCC in place of the Kurt Vonnegut Estate, which the court granted.[50]

## LEGAL STANDARD

To survive a Rule 12(b)(1) motion to dismiss, the plaintiff must establish the court's subject matter jurisdiction.[51] A Rule 12(b)(1) motion may be a facial attack, where the court assesses the sufficiency of the allegations in the complaint, or a factual attack, where the court considers facts outside the complaint upon which jurisdiction depends.[52] Here, Defendants bring

---

[46] Dkt. 1, *Complaint*.

[47] *Complaint*.

[48] *Motion*.

[49] Dkt. 114, *Plaintiffs' Opposition to Defendants' Motion to Dismiss* (*Opposition*); Dkt. 115, *Defendants' Reply in Support of Amended Motion to Dismiss* (*Reply*).

[50] *KVLLC Motion*; *KVLLC Order*.

[51] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 104 (1998); *see also* Fed. R. Civ. P. 12(b)(1).

[52] *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001); *see also Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013) ("Where the party challenging subject-matter jurisdiction mounts a facial attack, 'the district court must accept the allegations in the complaint as true.' But if the challenging party brings a factual attack by 'going beyond allegations contained in the complaint and challenging the facts upon which subject matter jurisdiction is based the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (citation modified) (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001))).

a facial challenge.[53] In resolving a facial attack, the court assumes the truth of the factual allegations and evaluates whether the allegations plausibly support entitlement to relief.[54]

To survive a Rule 12(b)(6) motion, the plaintiff must "nudge" the "claims across the line from conceivable to plausible."[55] "In ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[56] A claim is plausible when the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] "Detailed factual allegations" are not required, but "a formulaic recitation of the elements of a cause of action will not do."[58]

**ANALYSIS**

The Motion seeks to dismiss (1) the Individual Defendants for failure to state a claim because the claims against them are duplicative of the claims against the Entity Defendants, (2) the Author Plaintiffs for lack of subject matter jurisdiction because they lack standing, and (3) the Kurt Vonnegut Estate because it is not a legal entity capable of bringing suit. The court considers each argument in turn.

---

[53] *See Motion* at 8, 10–21.

[54] *See Ingram*, 728 F.3d at 1242.

[55] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[56] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009).

[57] *Iqbal*, 556 U.S. at 678 (citation modified).

[58] *Twombly*, 550 U.S. at 555 (citation modified).

### I. Individual Defendants

The Motion argues the Individual Defendants sued in their official capacity as a member or officer of an Entity Defendant should be dismissed because the claims are redundant of the claims against the Entity Defendants.[59]

When a plaintiff brings duplicative § 1983 claims against an official in their official capacity and the state entity, the court should dismiss the claims against the officer under Rule 12(b)(6).[60] This is because an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity."[61] But claims that are not redundant should survive.[62] A claim is not redundant if one form of relief is available as to one defendant and not the other.[63]

Here, Plaintiffs bring both claims against all Defendants.[64] The Motion seeks to dismiss the claims against the Individual Defendants because the claims are duplicative of the claims against the Entity Defendants. Plaintiffs argue the claims seeking prospective relief against the Individual Defendants are not duplicative because prospective injunctive relief is not available against the Entity Defendants.[65] Defendants do not oppose these claim surviving "on this narrow

---

[59] *Motion* at 9–11.

[60] *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *Summum v. Pleasant Grove City*, No. 2:05-cv-638 DAK, 2010 WL 2330336, at *2 (D. Utah June 3, 2010) (dismissing official-capacity claims because "all claims against the Individual Defendants in their official capacities are redundant with the claims against the municipality").

[61] *Graham*, 473 U.S. at 165–66.

[62] *Byron v. Univ. of Utah*, No. 2:20-cv-00290-DBB, 2021 WL 4427481, at *2 (D. Utah Sept. 24, 2021) (concluding official capacity suit is not superfluous with suit against state entity because injunctive relief may be available against the officers and not against the entity).

[63] *Id.*

[64] *Complaint* ¶¶ 211–36.

[65] *Opposition* at 19–22.

ground for relief."[66] The court agrees and concludes the claims seeking prospective injunction relief against the Individual Defendants survive. But the claims against the Individual Defendants seeking other relief are duplicative of the claims against the Entity Defendants. Accordingly, the court dismisses all claims against the Individual Defendants that seek relief other than prospective injunction relief.

## II. Author Plaintiffs

The Motion also seeks dismissal of the Author Plaintiffs for lack of standing.[67] "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III."[68] Standing requires the plaintiff to establish (1) an injury-in-fact that is concrete, particularized, and actual or imminent, (2) that is fairly traceable to the defendant's challenged action, and (3) that is redressable by a favorable decision.[69] An injury-in-fact must involve "an invasion of a legally protected interest."[70] But when assessing standing, "the question is not whether the alleged injury rises to the level of a constitutional violation. That is the issue on the merits. For standing purposes, the court asks only if there was an injury in fact, caused by the challenged action and redressable in court."[71] Accordingly, the court assumes the legal validity of the plaintiff's claims at this stage.[72]

---

[66] *Reply* at 13.

[67] *Motion* at 10–21.

[68] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified).

[69] *Id.* at 560–61.

[70] *Courage to Change Ranches Holding Co. v. El Paso County*, 73 F.4th 1175, 1188 (10th Cir. 2023).

[71] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006) (citation modified); *see also Mighell v. HPG Pizza I, LLC*, No. 25-1019, 2026 WL 2321872, at *1 (10th Cir. Aug. 11, 2026) (unpublished) (explaining the court may "not wade into the merits of a plaintiff's claim in making [its] standing determination").

[72] *Mighell*, 2026 WL 2321872, at *3.

The Motion argues the Author Plaintiffs fail to allege a cognizable injury-in-fact because they have not suffered an invasion of a constitutionally protected right.[73] Defendants contend the Book Removal Law prohibits LEAs from using books as instructional materials in the school setting, and does not target any specific book or author for exclusion, prohibit minors from reading or obtaining banned material, or prohibit sellers from selling it to minors.[74]

But the Complaint alleges the Book Removal Law prohibits the Plaintiff Authors from reaching their intended audience and harms them financially and reputationally.[75] The Per Se Ban has removed at least one published book written by each Author Plaintiff from Utah public schools: Vonnegut's *Slaughterhouse-Five* has been removed by three LEAs[76]; Angelou's *I Know Why the Caged Bird Sings* had been removed by 2 LEAs[77]; Hopkins' books *Tricks*, *Tilts*, and *Fallout* have been removed from every public school in Utah[78]; Reed's *Beautiful* and *The Nowhere Girls* have been removed by at least 2 LEAs[79]; and Arnolds' *What Girls Are Made Of*, *Damsel*, *Infandous*, and *Red Hood* have been removed by at least three LEAs.[80] The intended

---

[73] *Motion* at 11.

[74] *Id.* at 11–12.

[75] *Complaint* ¶ 209.

[76] *Id.* ¶¶ 146, 154, 163 (Davis, Washington, and Granite School Districts). *Slaughterhouse-Five* has not been added to the Statewide Ban list because Granite School District's review is still "in process" such that its ban has not been applied towards the three-or-more LEA threshold that triggers statewide removal. *Id.* ¶ 170.

[77] *Id.* ¶¶ 147, 163 (Davis and Granite School Districts).

[78] *Id.* ¶ 51.

[79] *Id.* ¶¶ 154, 163, 177 (Washington School District, Granite School District, and at least one of Alpine, Canyons, Nebo, and Jordan School District).

[80] *Id.* ¶¶ 139, 146, 154, 163, 177, (Davis, Washington, and Granite School Districts removed all four books and *What Girls Are Made Of* and *Damsel* are both subject to the Statewide Ban).

audiences of these books is young adults.[81] The book ban has damaged the Plaintiff Authors financially, reputationally, and professionally.[82] This is sufficient to establish standing.[83]

The Motion advances two arguments for why Plaintiff Authors fail to allege a cognizable injury-in-fact: (1) the authors lack a constitutional right to have books purchased and stored in public libraries, and (2) library inventory is government speech that is not subject to a First Amendment challenge.[84] But both arguments address the merits of the Complaint: the First Amendment does not protect the right Plaintiffs assert here. The cases relied on by the Motion do not address standing but the merits of the First Amendment claim. For example, the Motion argues the Author Plaintiffs lack a constitutional right to benefit from the state "expend[ing] its resources to purchase and store the authors' books" by relying on the Supreme Court's decisions in *Regan v. Taxation with Representation of Washington*[85] and *United States v. American Library Association, Inc.*[86] Neither case addressed standing. In *Regan*, the Court held the internal revenue statute's provision permitting exemption status for not engaging in substantial lobbying activity does not violate the First Amendment because the "legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right."[87] Similarly, in *American Library Association*, the Court held a statute conditioning federal subsidies on a library's use of internet filters did not violate library patrons' First Amendment rights because

---

[81] *Id.* ¶ 55; *see also id.* ¶¶ 37, 43.

[82] *Id.* ¶¶ 37, 43, 55.

[83] *See Penguin Random House LLC v. Gibson*, 796 F. Supp. 3d 1052, 1064 (M.D. Fla. 2025) (concluding authors had standing to challenge law that removed their books from public school shelves preventing them from reaching their target audience).

[84] *Motion* at 11–21.

[85] 461 U.S. 540 (1983).

[86] 539 U.S. 194 (2003); *see Motion* at 12.

[87] *Regan*, 461 U.S. at 549.

refusing "to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity."[88] Both decisions address the merits of the asserted First Amendment claim—not standing.

The Motion also argues library inventory does not constitute government speech, but the argument primarily relies on *Pleasant Grove City v. Summum*,[89] *Arkansas Education Television Commission v. Forbes*,[90] and *National Endowment for the Arts v. Finley*[91]—three First Amendment cases that also address the merits of the constitutional challenge and not standing.[92]

Defendants' arguments wade into the merits of the First Amendment challenge which the court may not do in making its standing determination.[93] In *Penguin Random House LLC v. Gibson*,[94] the Middle District of Florida considered a constitutional challenge to a statute similar to Utah's Book Removal Law. There, the state defendants challenged the author-plaintiffs' standing and the merits of the constitutional claims.[95] Because standing is jurisdictional, the court first addressed and found the author plaintiffs suffered an injury-in-fact because each author "had at least one of their books removed from the shelves, which prevents them from reaching their target audience."[96] Only after confirming its jurisdiction did the court turn to the

---

[88] *Am. Lib. Ass'n,* 539 U.S. at 212–14 (citation omitted).

[89] 555 U.S. 460 (2009) (holding no First Amendment violation when the government refused to give a permit for a permanent monument in a city park because permanent monuments are a form of government speech).

[90] 523 U.S. 666 (1998) (holding no First Amendment violation when state-owned television broadcaster excluded political candidate from debate because the debate was a nonpublic forum and the decision was a reasonable, viewpoint-neutral exercise of journalistic discretion).

[91] 524 U.S. 569 (1998) (holding no First Amendment violation for federal funding program to include content-based criteria).

[92] *Motion* at 13–18; *see also Summum*, 555 U.S. at 467–81; *Forbes*, 523 U.S. at 672–83; *Finley*, 524 U.S. at 580–90.

[93] *See Mighell*, 2026 WL 2321872, at *1.

[94] 796 F. Supp. 3d 1052 (M.D. Fla. 2025).

[95] *Id.* at 1063–65, 1068–72.

[96] *Id.* at 1063–64.

merits arguments, including the two arguments raised here: whether library inventory constituted government speech and whether the authors had a constitutional right to the government benefit of expending resources on their books.[97]

Here, there is no pending motion to dismiss the Author Plaintiffs on the merits of their claims. The Motion moves for dismissal on the threshold standing inquiry alone.[98] But whether the Author Plaintiffs' injury "rises to the level of a constitutional violation" is an "issue on the merits."[99] "For purposes of standing, the question cannot be whether the Constitution, properly interpreted, extends protection to the plaintiff's asserted right or interest. If that were the test, every losing claim would be dismissed for want of standing."[100] Instead, when making the threshold standing determination, the court assumes the claims have legal validity.[101] Assuming the validity of the Author Plaintiffs' First Amendment claim, the court concludes the Author Plaintiffs have standing.

**III. Kurt Vonnegut Estate**

The Motion also seeks to dismiss the Kurt Vonnegut Estate because it is not a legal entity capable of bringing suit.[102] Because the Kurt Vonnegut Estate is no longer a party,[103] this request is denied as moot.

---

[97] *Id.* at 1068–72; *Motion* at 13–18.

[98] *See Motion*.

[99] *See Walker*, 450 F.3d at 1088.

[100] *Initiative & Referendum*, 450 F.3d at 1092.

[101] *See Mighell*, 2026 WL 2321872, at *1.

[102] *Motion* at 18–22.

[103] *See KVLLC Order* (granting *KVLLC Motion*).

## CONCLUSION

For the reasons explained above, the Motion[104] is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss the claims seeking prospective injunction relief against the Individual Defendants[105] is DENIED. All other claims against the Individual Defendants are DISMISSED. The Motion to Dismiss the Author Plaintiffs is DENIED. The Motion to Dismiss the Kurt Vonnegut Estate is DENIED as moot.

SO ORDERED this 15th day of September, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

[104] Dkt. 109.

[105] Individual Defendants refers to the following defendants: Amanda Bollinger, Randy Boothe, Joann Brinton, Christina Boggess, Cindy Bishop Davis, Jennie Earl, Emily Green, Rod Hall, Molly Hart, Matt Hymas, Cole Kelley, Joseph Kerry, Carol Barlow Lear, Sarah Reale, Leann Wood, Brigit Gerrad, Emily Price, Alisa Mercer, Joani Stevens, Julie Powell, Michelle Barber, Kristen Hogan, Bryce Williams, Charlotte Fife-Jepperson, Ashley Anderson, Nate Salazar, Annie Romano, Bryan Jensen, Amanda Longwell, David Stirland, Larene Cox, Craig SeegMiller, Burke Staheli, Craig Hammer, Heidi Gunn, Ron Wade, Brent Bills, Richard Holmes, Dan Linford, and Elizabeth Grant.